Citation Nr: 1708257 
Decision Date: 03/17/17 Archive Date: 04/03/17

DOCKET NO. 11-07 575 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to service connection for posttraumatic stress disorder (PTSD). 

2. Entitlement to service connection for an acquired psychiatric disorder other than PTSD, to include anxiety disorder, bipolar disorder, phobia, adjustment disorder, and depression.


REPRESENTATION

Appellant represented by: Jan D. Dils, Attorney-at-Law


WITNESS AT HEARING ON APPEAL

The Veteran and his wife



ATTORNEY FOR THE BOARD

J.N. Moats, Counsel

INTRODUCTION

The Veteran served on active duty in the United States Navy from December 1971 to December 1974, with additional service in the Reserves. 

This case is before the Board of Veterans' Appeals (Board) on appeal from a July 2009 rating decision by a Regional Office (RO) of the Department of Veterans Affairs (VA) that denied separate claims for service connection for anxiety, depression, and PTSD. 

The Veteran testified at a Board video conference hearing in November 2014 Board before the undersigned Veterans Law Judge. A transcript of the hearing has been associated with record. 

The Board previously remanded this case for further development in February 2015. After completing the requisite development, the case has now been returned for appellate review. 

The Board notes that the Veteran was previously represented by the American Legion. However, in November 2016, the Veteran appointed a new representative as reflected on the front page of this decision. In December 2016, the RO acknowledged the change in representation. 


FINDINGS OF FACT

1. The Veteran does not currently meet the diagnostic criteria for a diagnosis of PTSD.

2. An acquired psychiatric disorder other than PTSD, to include anxiety disorder, bipolar disorder, phobia, adjustment disorder, and depression, did not manifest during the Veteran's active duty service, and is not otherwise related to such service.

CONCLUSIONS OF LAW

1. The criteria for service connection for PTSD have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2016).

2. The criteria for service connection an acquired psychiatric disorder other than PTSD, to include anxiety disorder, bipolar disorder, phobia, adjustment disorder, and depression, have not been met. 38 U.S.C.A. §§ 1110,5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist 

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2016). 

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

In addition, the notice requirements of the VCAA apply to all elements of a service-connection claim. Accordingly, notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

VCAA notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). Where complete notice is not timely accomplished, such error may be cured by issuance of a fully compliant notice, followed by readjudication of the claim. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). 

Prior to initial adjudication of the Veteran's claims, a letter was sent in April 2008 that fully addressed all notice elements referable to the claims on appeal. The letter provided information as to what evidence was required to substantiate the claims and of the division of responsibilities between VA and a claimant in developing the information and evidence necessary to substantiate his claims. Moreover, the letter informed the Veteran of how VA determines the appropriate disability rating or effective date to be assigned when a claim is granted, consistent with the holding in Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

Next, VA has a duty to assist the Veteran in the development of the claims. This duty includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). The claims file contains the Veteran's service personnel and treatment records, post-service reports of VA treatment and private treatment, and VA examination reports dated in June 2009 and June 2016. The Board notes that the Veteran has reported that he is receiving disability benefits from the Social Security Administration (SSA) for physical disabilities, and there is no indication that he receives SSA disability benefits for a psychiatric disorder. Thus, there is no need to request his SSA records as such would not be relevant to the appeal. See Hayes v. Brown, 9 Vet. App. 67, 74 (1996) (VA is required to obtain evidence from the SSA, including decisions by the administrative law judge); Murincsak v. Derwinski, 2 Vet. App. 363 (1992).

The RO has made attempts to obtain all identified records. The Board has inspected the medical records for references to additional treatment reports not of record. Moreover, the Veteran's statements in support of the claim, including his Board hearing testimony, are of record. The Board has also carefully reviewed such statements and concludes that no available outstanding evidence has been identified. 

Moreover, although the Board previously found that the June 2009 examination was inadequate, the June 2016 the VA examination was prepared by a competent clinician who considered the Veteran's record and medical history in the report and provided an etiological opinion, complete with rationale, the Board finds that the VA examination is adequate to adjudicate the Veteran's claims decided herein. See Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007); Ardison v. Brown, 6 Vet. App. 405, 407 (1994); Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 

Moreover, in November 2014, the Veteran was provided an opportunity to set forth his contentions during a hearing before the undersigned Veterans Law Judge. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the Decision Review Officer or Veterans Law Judge who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. 

Here, during the November 2014 hearing, the undersigned noted the issues on appeal and information was obtained regarding the Veteran's contentions and his in-service stressors. Further, the hearing focused on the elements necessary to substantiate the Veteran's claims, to include in-service incurrence, current disability, and a nexus between the two. Therefore, not only were the issues "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim," were also fully explained. See Bryant, 23 Vet. App. at 497. Moreover, the Veteran was represented by his then representative from the American Legion at the hearing and the Veteran has not asserted that there was any prejudice with regard to the conduct of the hearing. To the extent any such notice may have been inadequate, this was effectively cured both by actual knowledge as evidence by statements and questions of the Veteran's authorized representative at the hearing, as well as by the Board providing such explanation of issues and suggesting submission of evidence in the subsequent remand the Board issued to develop this claims As such, the Board finds that, consistent with Bryant, the undersigned complied with the duties set forth in 38 C.F.R. § 3.103(c)(2) and that the Board may proceed to adjudicate the claim based on the current record.

Therefore, the Board finds that all reasonable efforts have been undertaken by VA with respect to the instant appeal, and no further development is required under these circumstances. For the above reasons, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

Finally, the Board finds that there was substantial compliance with the Board remand directives. A remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order. Stegall v. West, 11 Vet. App. 268 (1998). Nonetheless, it is only substantial compliance, rather than strict compliance, with the terms of a remand that is required. See D'Aries v. Peake, 22 Vet. App. 97, 104 (2008) (finding substantial compliance where an opinion was provided by a neurologist as opposed to an internal medicine specialist requested by the Board); Dyment v. West, 13 Vet. App. 141 (1999). 

In particular, in its prior remand, the Board directed the AOJ to associate an April 2010 notice of disagreement with the record, contact the Veteran to obtain additional private clinical records and any further information regarding his in-service stressors, obtain additional VA treatment records and additional service personnel records, and afford the Veteran a VA examination. In this regard, in October 2015, the AOJ contacted the Veteran to obtain authorization for additional records. While the Veteran submitted additional records himself, he did not provide any further authorizations to obtain such records. Moreover, the AOJ obtained the April 2010 NOD, additional VA treatment records and additional service personnel record, and the Veteran was afforded a VA examination in June 2016 that is adequate for appellate review. Accordingly, the Board finds that there has been substantial compliance with the Board remand directives and, therefore, no further remand is necessary. See Stegall, supra; D'Aries, 22 Vet. App. at 104 (2008).

II. Analysis

The Veteran is seeking service connection for PTSD and an acquired psychiatric disorder other than PTSD, to include anxiety disorder, bipolar disorder, phobia, adjustment disorder, and depression. As these are all psychiatric disorders and the same evidence is pertinent to both claims, the Board has addressed both of these matters under the same analysis. 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. 38 U.S.C.A. § 1112; 38 C.F.R. § 3.304. See also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

Additionally, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, such as psychosis, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). In the instant case, the Veteran's psychiatric diagnoses have not been characterized as psychosis and, in turn, are not one of the diseases enumerated under at 38 C.F.R. § 3.309(a).

Service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a), a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. If the evidence establishes that the veteran engaged in combat with the enemy and the claimed stressor is related to that combat, in the absence of clear and convincing evidence to the contrary, and provided that the claimed stressor is consistent with the circumstances, conditions, or hardships of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. See 38 C.F.R. § 3.304(f). 

For cases certified to the Board prior to August 4, 2014, such as this, the diagnosis of PTSD must be in accordance with the American Psychiatric Association 's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV). 38 C.F.R. § 4.125(a) (2015); Schedule for Rating Disabilities-Mental Disorders and Definition of Psychosis for Certain VA Purposes, 79 Fed. Reg. 45 ,093 (Aug, 4, 2014) (Applicability Date) (updating 38 C.F.R. § 4.125 to reference DSM-V).

Effective July 13, 2010, VA amended its adjudication regulations governing service connection for PTSD by liberalizing, in certain circumstances, the evidentiary standard for establishing the required in-service stressor. Specifically, the final rule amends 38 C.F.R. § 3.304(f) by redesignating current paragraphs (f)(3) and (f)(4) as paragraphs (f)(4) and (f)(5), respectively, and by adding a new paragraph (f)(3) that reads as follows: 

(f)(3) If a stressor claimed by a Veteran is related to the Veteran's fear of hostile military or terrorist activity and a VA psychiatrist or psychologist, or a psychiatrist or psychologist with whom VA has contracted, confirms that the claimed stressor is adequate to support a diagnosis of [PTSD] and that the Veteran's symptoms are related to the claimed stressor, in the absence of clear and convincing evidence to the contrary, and provided the claimed stressor is consistent with the places, types, and circumstances of the Veteran's service, the Veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. For purposes of this paragraph, "fear of hostile military or terrorist activity" means that a Veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the Veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the Veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror.

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Analysis

In the instant case, the Veteran has not asserted that he engaged in combat with the enemy or that his in-service stressor is related to the Veteran's fear of hostile military or terrorist activity. The Veteran has reported the confirmed stressor of his compartment being filled with smoke during a ship fire and of certain fellow shipmates who died. The Veteran has also reported in-service verbal harassment, to include harassment of a racial nature, from fellow shipmates. The Veteran has also indicated fear during an alleged incident when a nuclear bomb was leaking on the ship. The Veteran has also reported an alleged incident on the ship when he was getting supplies and the pallets hit his forklift and knocked him into the catwalk. The Veteran stated that but for that catwalk, he would have been lost in the sea. 
Service treatment records are silent with respect to any findings, complaints or diagnoses of an acquired psychiatric disorder. Importantly, the Veteran's November 1974 service examination prior to discharge showed that he was clinically evaluated as psychiatrically normal. An interim Report of Medical History during Reserve service dated in March 1976, over a year after the Veteran's discharge from active duty, showed that the Veteran reported frequent trouble sleeping. The physician noted mild anxiety, not considered disqualifying. However, a contemporaneous Reserve medical examination again showed that the Veteran was clinically evaluated as psychiatrically normal. Significantly, follow-up interim Reserve examinations in October 1977, October 1978, October 1980, December 1979, January 1981, June 1983, December 1983, October 1987, November 1988 and November 1989 all show that the Veteran was psychiatrically normal and he explicitly denied any such symptoms in his contemporaneous medical histories. 

The first post service medical evidence of an acquired psychiatric disorder is an October 1999 VA treatment record, almost 25 years after discharge from active service, which showed a diagnosis of bipolar disorder, but no further information was given beyond listing the diagnosis. A January 2002 record showed that the Veteran was seen several years ago for anxiety and he requested an appointment as it was reoccurring and worse. A follow up record shows an assessment of anxiety. It was observed that the diagnosis of bipolar disorder was incorrect and that the Veteran had just anxiety. There was no mention of any trauma in service at this time. A follow up record in February 2002 showed that mental status examination was 100 percent normal. Again, no military stressors were reported. Likewise, nothing additional was reported in August 2002. Follow up records, until September 2007, continue to show a diagnosis of anxiety, but with the exception of noting prescribed medications, do not provide any clinical findings. 

In September 2007, the Veteran presented with anxiety for six months. He denied any trauma or PTSD history. The Veteran's chronic pain was noted and a diagnosis of adjustment disorder with anxiety and depressed mood was given. However, a PTSD screening was positive. Thus, the Veteran was seen by Dr. T.M, a VA staff psychiatrist, in November 2007 for the PTSD positive screening. The Veteran primarily reported his physical disabilities and his inability to work due to them. He also reported a phobia of snakes. The Veteran has indicated that since his injury in 2005 and with all that had happened since then, his memories and experiences in Vietnam had haunted him more. He reported that he was involved in nuclear leaks, faced potentially fatal compartment fire, and took hostile fire on many occasions. The examiner diagnosed general anxiety disorder, PTSD, delayed onset (now problematic due to extreme general stressors), depression secondary to medical and social issues vs. chronic adjustment disorder and depressed mood. However, a follow up record in February 2008 by the same doctor showed an assessment of anxiety and "possible" PTSD. In April 2008, the Veteran was seen by a licensed social worker to establish individual therapy. The Veteran reported a spiral down since 2005 when he lost his job and had several major surgeries. The impression was anxiety, bi-polar, rule out PTSD and depression stemming from multiple medical issues. Follow up records showed an assessment of anxiety disorder, not otherwise specified, with features of PTSD, generalized anxiety disorder and phobia; and depression not otherwise specified with reported history of bipolar disorder. 

The record also includes a May 2008 statement from the Ft. Lauderdale Vet Center. It noted that the Veteran was treated there from May 1987 until May 1993 for PTSD. However, no further information was given as the Veteran's counselor was no longer on staff. 

The Veteran was afforded a VA examination in June 2009 with a VA clinical psychologist. The claims file was reviewed. It was noted that the Veteran had intermittent counseling at the Ft. Lauderdale Vet Center. The Veteran indicated that he sought treatment because a prospective employer wanted him to have treatment due the fact that the Veteran was a Vietnam Veteran as well as experiencing marital problems and difficulty sleeping. The examiner observed that the Veteran next sought treatment beginning in 2002 at VA. The Veteran again reported the in-service stressor of a fire aboard the USS America. Nevertheless, after examining the Veteran, the VA examiner determined that the Veteran did not meet the criteria for a diagnosis of PTSD. Rather, the examiner diagnosed the Veteran with depressive disorder and opined that this disorder was associated with unemployment secondary to post-service injury and was not related to service. Notably, in February 2015, the Board found that this opinion with respect to the etiology of the Veteran's depressive disorder was inadequate, as it does not address the Veteran's reported history of psychiatric symptoms since service and the Veteran's history of mental health treatment prior to his unemployment. In this regard, the examiner did not address the March 1976 Report of Medical History that showed anxiety and trouble sleeping. 

Subsequent VA treatment records showed that in March 2012, Dr. T.M. indicated that the Veteran's symptoms were difficult to track to a clear diagnosis. However, PTSD symptoms were again noted. Significantly, a September 2014 VA treatment record by another VA psychiatrist, Dr. D.P. showed a diagnosis of PTSD. However, the VA psychiatrist then noted that information contained was based on self-report and was not sufficient to use alone for diagnostic purposes. Follow up clinical records by Dr. D.P. continue to show a diagnosis of PTSD, bipolar II disorder and hypomanic. 

At the Board hearing, the Veteran again reported his in-service stressors as described above. He further testified that he had been suffering from mental health symptoms since the in-service incidents. His wife stated that she had been married to the Veteran for 19 years and watched his psychiatric symptoms worsen over the years. 

The Veteran submitted a statement dated in February 2015 from a friend. She had met the Veteran 15 years prior and described the Veteran's psychiatric symptoms. 

In support of his claim, the Veteran submitted a November 2015 opinion from his family physician, who is identified as a medical doctor as opposed to a psychiatrist or psychologist. After reviewing the Veteran's records and examining the Veteran, the examiner indicated that the Veteran demonstrated the existence of medically determined PTSD through a duration over the years of signs/symptoms and medical evidence. She concluded that it in her opinion, it was more likely than not that the Veteran's diagnosis of PTSD, depression and anxiety is caused by the events that occurred during active duty military service. 
The Veteran was afforded another VA examination in June 2016 with another VA psychologist. The electronic record was reviewed. The examiner thoroughly summarized the Veteran's VA treatment records. The examiner acknowledged the Veteran's stressors that had been confirmed by the RO. However, after examining the Veteran, the examiner determined that the Veteran did not meet the diagnostic criteria under DSM-V for PTSD. Specifically, the examiner noted that the Veteran did not report experiencing any significant symptoms of negative mood or cognition, or increased arousal that can be linked to his prior military as required for a diagnosis of PTSD. Rather, the examiner diagnosed unspecified anxiety disorder. 

The examiner continued that a review of VA treatment records, mental health history and VBMS do not show evidence of a diagnosis of PTSD until 2007. Treatment records available from 1999 evidence prior treatment for bipolar disorder and anxiety. Although a letter from the Ft. Lauderdale Vet Center indicated that the Veteran was treated for PTSD from 1987 to 1993, no additional information regarding this diagnosis or treatment was provided. VA records since 2007 continue to document anxiety, bipolar disorder and PTSD. In October 2012, he was
also diagnosed with provisional malingering. Records also evidence a history
of compensation seeking behavior/litigation and evidence of a personality disorder. In turn, the examiner indicated that it would be speculative to link this Veteran's current report of symptoms to his prior military service. Although records from March 1976 evidence the endorsement of sleep impairment due to mild anxiety, There is no other evidence to support a mental disorder diagnosis or treatment. There is no other evidence of a mental disorder until 1987 when he received treatment at the Vet Center in Ft. Lauderdale. Unfortunately, there is no evidence available regarding the stressor(s) that contributed to his reported PTSD. The Veteran did not report any trauma related symptoms until 2007 despite receiving
mental health treatment there since 1999. Although his reported symptoms of re-experiencing and avoidance can be attributed to his conceded military stressors, additional symptoms cannot be linked to prior military service given evidence of post-service stressors and chronic medical condition contributing to his disability from the state of Florida and SSDI .

The Board recognizes that in Jones v. Shinseki, 23 Vet. App. 382 (2010), the Court indicated that when a VA medical examiner was unable to provide a requested medical opinion, it was unclear whether the examiner was unable to provide this requested definitive medical comment on etiology because they actually were unable to since the limits of medical knowledge had been exhausted or, instead, for example, needed further information to assist in making this determination (e.g., additional records and/or diagnostic studies) or other procurable and assembled data. In the instant case, the examiner provided that it would be speculative to link the Veteran's current report of symptoms to his prior military service. However, in contrast to Jones, the examiner did not indicate that she was unable to provide an opinion; rather she determined that based on the medical evidence of record, it would require pure speculation to link any disorder to his service. In other words, the evidence did not support such a link. She also provided a detailed rationale for such finding. Again, the opinion was prepared by a competent clinician who considered the Veteran's record and medical history in the report and provided an etiological opinion, complete with rationale. Thus, the Board finds that the VA examination is adequate and of high probative value. 

Initially, the Board finds that service connection for PTSD is not warranted as the evidence fails to show that the Veteran meets the diagnostic criteria for a diagnosis of PTSD. In this regard, both VA psychiatrists found on examination that the Veteran did not meet the diagnostic criteria for PTSD under the criteria in effect at those times. The examiners were informed of the Veteran's confirmed in-service stressors and were directly requested to determine whether the Veteran met the criteria for PTSD based on such stressors, but still determined that the Veteran did not meet the diagnostic criteria for PTSD. Rather, both examiners diagnosed the Veteran with other acquired psychiatric disorders. Given that the examination reports set forth detailed examination findings in a manner which allows for informed appellate review under applicable VA laws and regulations, the Board finds the examinations to be sufficient for appellate review and of high probative value with respect to whether the Veteran suffers from PTSD. 

As noted, the Veteran's VA treating psychiatrists in the past have generally indicated that the Veteran has PTSD. Moreover, there is a statement from the Ft. Lauderdale Vet Center that the Veteran was treated for PTSD from 1987 to 1993. However, these diagnoses do not meet the DSM IV or DSM V criteria for a diagnosis of PTSD. In this regard, the diagnoses are not clearly attributed to a corroborated in-service stressor. Although the Veteran's stressors were discussed in the clinical records, none of the examiners attributed the PTSD diagnosis to such stressors; or discussed what PTSD criteria had been met in order to render such diagnosis. The Board also finds it significant that the Veteran's diagnosis fluctuated. In this regard, although the Dr. T.M initially diagnosed PTSD in November 2007, follow up clinical records do not show such a clear diagnosis, but rather indicated that he suffers from PTSD features. Likewise, the Veteran's subsequent VA treating psychiatrist clearly stated that the diagnosis of PTSD was based on self-report and was not sufficient to use alone for diagnostic purposes. In light of the above, these medical records are accorded no probative weight on the question of whether the Veteran meets the diagnostic criteria for PTSD as is required for VA compensation purposes.

The Board also recognizes the private opinion by the Veteran's medical doctor showing a diagnosis of PTSD. However, again, she has been identified as a medical doctor as opposed to a psychiatrist or psychologist with the necessary educational background and experience in treating and/or diagnosing psychiatric disorder. Moreover, the private doctor did not discuss the Veteran's in-service stressors in her opinion so the diagnosis again is not clearly attributed to a corroborated in-service stressor. In sum, it is simply not clear from her opinion whether this diagnosis of PTSD meets the diagnostic criteria under DSM IV or V. As such, this opinion is also outweighed by the more probative VA examinations. 

The Board has also considered statements from the Veteran, his wife and his friend describing his PTSD symptoms. The Board acknowledges that lay assertions may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. Here, the Veteran, his wife and his friend are competent to describe his psychiatric symptoms. However, in the instant case, licensed medical professionals have determined that the Veteran does not meet the criteria for PTSD, which is an inherently medical question. Rather, medical professionals have diagnosed the Veteran with other psychiatric disorders. Importantly, the Veteran, his wife and friend are not competent to render a diagnosis of PTSD as medical expertise is required to ascertain and diagnosis a certain psychiatric disability and the Veteran, his wife and friend are not shown to have such experience. In short, service connection is denied for PTSD, because there is no diagnosis of record that is adequate for VA compensation purposes.

Moreover, based on the medical evidence of record, the Board must find that service connection for an acquired psychiatric disorder other than PTSD, to include anxiety disorder, bipolar disorder, phobia, adjustment disorder, and depression, is also not warranted. In this regard, service treatment records are silent with respect to any findings, treatment or diagnosis of an acquired psychiatric disorder and there is no competent medical evidence linking any acquired psychiatric disorder to service, to include the Veteran's in-service stressors. Again, after reviewing the claims file, the highly probative June 2016 VA examiner found that it would be speculative to link the Veteran's acquired psychiatric disorder to service and provided a detailed rationale for this opinion. The examiner noted that there was no evidence to support a mental disorder diagnosis in 1976 and determined that there was no evidence of a mental disorder until 1987. The examiner also observed that the Veteran did not report any trauma related symptoms until 2007 despite receiving prior treatment. The examiner further found that the Veteran's other psychiatric symptoms could not be attributed to his military stressors given the evidence of post service stressors and his chronic medical condition. The contemporaneous record supports this conclusion. 

Again, in the instant case, the Veteran, his wife and his friend are competent to report any in-service symptoms, as well as pertinent symptomatology since service. However, they are not competent to directly link any current psychiatric disability to service as medical expertise is required. Moreover, the Board finds the Veteran's current assertions of pertinent symptoms since service to not be credible. In weighing credibility, VA may consider interest, bias, inconsistent statements, bad character, internal inconsistency, facial plausibility, self interest, consistency with other evidence of record, malingering, desire for monetary gain, and demeanor of the witness. Caluza v. Brown, 7 Vet. App. 498 (1995). In the instant case, the Board finds that such statements are not credible as they are outweighed by the contemporaneous evidence of record and were made under circumstances indicating bias or interest. 

Importantly, service treatment records during active duty are silent with respect to any findings, complaints or diagnoses of an acquired psychiatric disorder. Moreover, although he reported mild anxiety in March 1976, no chronic disorder was diagnosed at that time and numerous periodic service examinations from 1977 to 1989 are silent with respect to psychiatric abnormalities. Significantly, the Veteran did not report any psychiatric symptoms in his contemporaneous medical histories. See Curry v. Brown, 7 Vet. App. at 68 (contemporaneous evidence has greater probative value than history as reported by the claimant). The medical evidence of record is silent with respect to any psychiatric disorder until approximately 1987, many years after active duty, when he sought treatment at the Ft. Lauderdale Vet Center. Further, when the Veteran first sought treatment at the VA, he did not report that his symptoms dated back to in-service trauma until 2007. These inconsistencies weigh against his later statements of pertinent symptoms since service. In sum, the Veteran's current statements, made in connection with his pending claim for VA benefits, that he has experienced continuous symptoms since service, are inconsistent with the contemporaneous evidence. 

The Board is cognizant that, while the lack of contemporaneous medical records may be a fact that the Board can consider and weigh against a claimant's lay evidence, the lack of such records does not, in and of itself, render lay evidence not credible. Buchanan v. Nicholson, 451 F.3d 1331, 1337 (2006). The Board, however, finds in the instant case that the combination of the Veteran's express denial of any symptoms on numerous periodic service medical histories, the lack of medical evidence for many years after service, and the fact that he was silent with respect to any symptoms related to the in-service stressors until 2007 to be persuasive evidence against his claim. Accordingly, while his contentions have been carefully considered, his statements are outweighed by the more probative June 2016 VA opinion. 

As a final matter, the Board has thoroughly reviewed the record, and there is no evidence of a diagnosis of psychosis within one year of separation. Therefore, presumptive service connection is not warranted. 

In conclusion, based on the analysis above, the Board finds that the preponderance of evidence is against the Veteran's claims for service connection for PTSD and an acquired psychiatric disorder other than PTSD, to include anxiety disorder, bipolar disorder, phobia, adjustment disorder, and depression. As the preponderance of the evidence weighs against the claims, the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C.A. § 5107(b).


ORDER

Service connection for PTSD is denied.

Service connection for an acquired psychiatric disorder other than PTSD, to include anxiety disorder, bipolar disorder, phobia, adjustment disorder, and depression is denied.



____________________________________________
Bethany L. Buck
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs